# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| SEAN MICHAEL ALMONTE, <br><br> Plaintiff, <br><br> v. <br><br> EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SERVICES, LLC, TRANS UNION LLC, and NELNET SERVICING, LLC <br><br> Defendants. | Case No.: 3:26-cv-00139 <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Sean Michael Almonte ("Plaintiff" or "Mr. Almonte") brings this case on an individual basis, against Defendants Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), Trans Union LLC, ("Trans Union"), (collectively, "Credit Bureau Defendants") and Nelnet Servicing, LLC, ("Nelnet") (collectively "Defendants") and states as follows:

## INTRODUCTION

1. Plaintiff, a victim of identity theft, brings this case against Defendants for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

## JURISDICTION AND VENUE

2. There exists subject matter jurisdiction in this case arising under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p because there exists a federal question under the FCRA.

3. Subject matter jurisdiction also exists because there is complete diversity amongst the parties, as Plaintiff resides in Connecticut, and upon information and belief, as alleged below, none of the Defendants were formed or organized in Connecticut, nor have a principal place of business in Connecticut.

1

4. Venue is proper in this District under 28 U.S.C. §1391(b) because the conduct complained of occurred in this district.

## PARTIES

5. Plaintiff Sean Michael Almonte ("Plaintiff") resides in Manchester, Connecticut, and qualifies as a "consumer" as defined in the FCRA.

6. Defendant Equifax Information Services, LLC ("Equifax") is a consumer reporting agency with its principal place of business located at 1550 Peachtree Street, N.W., Atlanta, GA 30309.

7. Defendant Experian Information Solutions, Inc. ("Experian") is a consumer reporting agency with a principal place of business located at 475 Anton Boulevard Costa Mesa, CA 92626.

8. Defendant Trans Union LLC ("Trans Union") is a consumer reporting agency with a principal place of business located at 555 West Adam Street, Chicago, IL 60661.

9. Defendant Nelnet Servicing, LLC, ("Nelnet") is a student loan servicing company with its headquarters in Lincoln, Nebraska.

10. Nelnet is a student loan servicer and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

## FACTUAL ALLEGATIONS

### Identity Theft

11. When Plaintiff was a minor, unauthorized individuals used Plaintiff's personal identifying information, without his knowledge, consent, or authorization, to apply for and obtain federal student loans in Plaintiff's name.

12. Plaintiff did not enroll, attend, or benefit from the educational programs for which the loans were purportedly issued.

13. Upon information and belief, the identity thief was Brenda Joy Hall ("Hall"), acting both independently and in concert with others, as part of a scheme to fraudulently obtain federal student aid through the misuse of minors' identities.

14. Hall was federally prosecuted and convicted for her role in concealing a student loan fraud conspiracy stemming from the same conduct at issue in this action.

15. At the time Hall engaged in his conduct, Plaintiff was unaware of same.

16. On or about August 18, 2025, Plaintiff obtained his credit reports from the CRA Defendants.

17. To his dismay, he discovered that the following fraudulent accounts appeared on his credit reports: (collectively, the "Fraudulent Student Loan Accounts"):

   a) Account No.: XXXXXXXXX9087
      Loan Type: Direct Subsidized Loan
      Status: Repayment
      Date First Disbursed: November 6, 2013
      Original Principal Amount: $3,500.00
      Current Balance: $3,972.34

   b) Account No.: XXXXXXXXX9287
      Loan Type: Direct Unsubsidized Loan
      Status: Repayment
      Date First Disbursed: November 6, 2013
      Original Principal Amount: $2,000.00
      Current Balance: $2,473.78

   c) Account No.: XXXXXXXXX8887
      Loan Type: Direct Subsidized Loan
      Status: Repayment
      Date First Disbursed: September 11, 2014
      Original Principal Amount: $3,500.00
      Current Balance: $4,052.60

    d) Account No.: XXXXXXXXX9187
       Loan Type: Direct Unsubsidized Loan
       Status: Repayment
       Date First Disbursed: September 11, 2014
       Original Principal Amount: $2,000.00
       Current Balance: $2,523.93

    e) Account No.: XXXXXXXXX8987
       Loan Type: Direct Subsidized Loan
       Status: Repayment
       Date First Disbursed: September 12, 2016
       Original Principal Amount: $2,250.00
       Current Balance: $2,421.24

    f) Account No.: XXXXXXXXX9387
       Loan Type: Direct Unsubsidized Loan
       Status: Repayment
       Date First Disbursed: September 12, 2016
       Original Principal Amount: $1,000.00
       Current Balance: $1,112.56

**Plaintiff's Communication with Defendant Nelnet August 2025**

18. On or about August 22, 2025, Plaintiff contacted Defendant Nelnet and informed them that he did not apply for, authorize, or knowingly incur the loans.

19. Plaintiff requested copies of the Master Promissory Notes and related documents.

20. After speaking with Nelnet, Plaintiff filed an FTC Identity Theft Report identifying the Nelnet-serviced student loan accounts as fraudulent.

**Plaintiff's Dispute to the CRA Defendants September 2025**

21. On or about September 4, 2025, Plaintiff disputed the Fraudulent Student Loan Accounts with Equifax, Experian, and TransUnion.

22. Plaintiff requested that the identity theft information be blocked from his credit file.

**Defendant Equifax's Unreasonable Dispute Reinvestigation September 2025**

23. Upon information and belief, Defendant Equifax received Plaintiff's dispute and block request.

24. In a letter dated September 15, 2025, Equifax requested additional documents from Plaintiff even though Plaintiff provided his identification, proof of address, and FTC Identity Theft Report.

25. Defendant Equifax failed to adequately review all the information provided to it by Plaintiff.

26. Defendant Equifax failed to reinvestigate Plaintiff's dispute and failed to block the identity theft information.

27. Defendant Equifax violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed accounts were the product of identity theft.

28. Defendant Equifax violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information.

**Defendant Trans Union's Unreasonable Dispute Reinvestigation September 2025**

29. Upon information and belief, Defendant Trans Union received Plaintiff's dispute and block request.

30. Upon information and belief, Defendant Trans Union sent Defendant Nelnet an automated credit dispute verification ("ACDV") in response to Plaintiff's dispute, but Nelnet failed to adequately reinvestigate.

31. Despite receiving Plaintiff's dispute, TransUnion failed to respond, properly reinvestigate, or provide any written notice of the results of its reinvestigation.

32. On information and belief, Defendant Trans Union failed to adequately review all the information provided to it by Plaintiff.

5

33. Defendant Trans Union failed to reinvestigate Plaintiff's dispute and failed to block the identity theft information.

34. Defendant Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation regarding the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

35. Defendant Trans Union violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

**Defendant Experian's Unreasonable Dispute Reinvestigation September 2025**

36. Upon information and belief, Defendant Experian received Plaintiff's dispute and block request.

37. Upon information and belief, Defendant Experian sent Defendant Nelnet an automated credit dispute verification ("ACDV") pursuant to Plaintiff's September 2025 dispute to Defendant Experian.

38. Upon information and belief, Defendant Nelnet received Defendant Experian's ACDV and did not adequately reinvestigate Plaintiff's dispute.

39. In a letter dated October 12, 2025, Experian notified Plaintiff that dispute results were available.

40. However, the Fraudulent Student Loan Accounts were not removed or blocked from his credit file.

41. Upon information and belief, Defendant Experian failed to reasonably reinvestigate Plaintiff's dispute and failed to block the identity theft information.

42. Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation regarding the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

43. Defendant Experian violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information.

### Defendant Nelnet's Unreasonable Dispute Investigation September 2025

44. On or about September 24, 2025, Defendant Nelnet responded to Plaintiff's dispute that no adjustment was needed, claiming Plaintiff's dispute was "incomplete or invalid" without explanation.

45. Upon information and belief, Defendant Nelnet failed to reasonably review all the information provided to it by Plaintiff.

46. Upon information and belief, Defendant Nelnet verified the disputed information as accurate in response to Defendant Trans Union's ACDV.

47. Upon information and belief, Defendant Nelnet verified the disputed information as accurate in response to Defendant Experian's ACDV.

48. Defendant Nelnet violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed Fraudulent Account was the product of identity theft.

### PLAINTIFF'S DAMAGES

49. Plaintiff did exactly what he should have done upon realizing he was the victim of identity theft.

50. Plaintiff disputed directly with Defendant Nelnet on one occasion and explained that the Fraudulent Student Loan Accounts were fraudulently opened and that he was the victim of identity theft.

51. Plaintiff filed an FTC ID Theft Report.

52. Plaintiff disputed the fraudulent accounts with the Credit Bureau Defendants.

53. Plaintiff immediately identified himself as an identity theft victim and requested from the Credit Bureau Defendants block the account information that was the product of identity theft.

54. The Credit Bureau Defendants failed to block the Fraudulent Student Loan Accounts that was the product identity theft despite Plaintiff's multiple disputes.

55. Plaintiff reasonably believes that Defendant Nelnet failed to conduct a reasonable reinvestigation after receiving the Credit Bureau Defendants' ACDVs.

56. As a direct result of the Credit Bureau Defendants' refusal to block the Fraudulent Student Loan Accounts, which was a product of identity theft, the Credit Bureau Defendants continued to saddle Plaintiff with fraudulent student loan accounts as active obligations with outstanding balances, that was the product of identity theft.

57. Further, as a direct result of Defendant Nelnet's verification of the disputed Fraudulent Student Loan Accounts to Defendants Equifax, Experian, and Trans Union, Defendant Nelnet has continued to saddle Plaintiff with fraudulent student loan accounts as active obligations with outstanding balances, which was the product of identity theft.

58. Due to Defendants' refusals to comply with their respective obligations under the FCRA, Plaintiff was forced to obtain legal advice and counsel, incurring attorney's fees.

59. Further, and due to Defendants' refusal to block the Fraudulent Student Loan

Accounts from an identity theft victim's consumer file, Plaintiff expended countless hours disputing same with each of the Defendants: Equifax, Experian, Trans Union, and Nelnet.

60. Defendants' conduct has caused Plaintiff extreme and ongoing stress and anxiety.

61. Plaintiff has suffered sleepless nights, frustration, worry, and ultimately felt utterly hopeless that Defendants would ever properly reinvestigate his disputes.

62. At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

63. At all times pertinent hereto, the conduct of Defendants, as well as that of their representative agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

64. The Credit Bureau Defendants are aware of the shortcomings of their respective procedures and intentionally choose not to comply with the FCRA to lower their costs. Accordingly, the Credit Bureau Defendants' violations of the FCRA are willful.

65. The Credit Bureau Defendants' policies and procedures clearly establish willfulness, wantonness, and utter and reckless disregard for the rights and interests of consumers and led directly to the injuries of Plaintiff as described in this complaint.

66. As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove the fraudulent and derogatory student loan accounts that was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the fraudulent and derogatory student loan accounts that was the product of identity theft.

67. Additionally, Plaintiff also suffers interference with daily activities and emotional distress, including mental anguish, sleep loss, humiliation, stress, anxiety, and embarrassment from being an identity theft victim whose claims are doubted by the Defendants.

## COUNT I
## 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
### (Defendants Equifax, Experian, and Trans Union)

68. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein.

69. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

70. Despite actual and implied knowledge that Plaintiff was the victim of identity theft, the Credit Bureau Defendants readily and repeatedly sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness by suggesting that Plaintiff had a loan account and that he was delinquent on at least one occasion.

71. Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

72. Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

73. Defendant Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

74. As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove the fraudulent and derogatory student loan accounts that was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the fraudulent and derogatory student loan account6s that was the product of identity theft.

75. The continued reporting of the fraudulent student loan accounts caused Plaintiff to incur higher interest rates when credit was available and resulted in repeated denials of credit, including denials for automobile financing, housing, and credit cards. As a result, Plaintiff was unable to secure reliable transportation and independent housing during critical periods, impairing his ability to maintain stability for himself and his family.

76. The ongoing inaccurate reporting continued to cause concrete credit denials in 2025.

77. On November 19, 2025, Plaintiff applied for credit with Chase Bank and was denied based on information contained in his Experian consumer report.

78. On November 26, 2025, Plaintiff applied for credit with Citibank and was denied based on information contained in his Equifax consumer report.

79. On December 11, 2025, Plaintiff applied for credit with Barclays and was denied based on information contained in his Experian and TransUnion consumer reports.

80. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose

veracity is doubted and questioned and disbelieved by the Credit Bureau Defendants.

81. The Credit Bureau Defendants' conduct, actions, and inactions were willful, rendering Defendants Equifax, Experian, and Trans Union liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the Credit Bureau Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

82. Plaintiff is entitled to recover attorneys' fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation
### (Defendants Equifax, Experian, and Trans Union)

83. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

84. The FCRA mandates that a credit reporting agency ("CRA") conduct an investigation of the accuracy of information "if the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. See 15 U.S.C. § 1681i(a)(1).

85. The Act imposes a thirty (30) day limitation for the completion of such an investigation. Id.

86. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. See 15 U.S.C. § 1681i(a)(5)(A).

87. In 2025, Plaintiff disputed the inaccurate information with the Credit Bureau Defendants and requested that they correct and/or delete a specific item in his credit file that is patently inaccurate, misleading, and highly damaging to his, namely, the Fraudulent Student Loan Accounts that was the product of identity theft which was a very stressful situation for the Plaintiff.

88. Plaintiff disputed the identity theft information to the Credit Bureau Defendants but to no avail.

89. On at least one occasion, Plaintiff supported his dispute with a copy of the police report and the FTC ID Theft Report.

90. Despite actual and implied knowledge that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, Defendant Equifax conducted virtually no investigations of Plaintiff's disputes, or such investigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

91. Despite actual and implied knowledge that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, Defendant Experian conducted virtually no investigations of Plaintiff's disputes, or such investigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

92. Despite actual and implied knowledge that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, Defendant Trans Union conducted virtually no investigations of Plaintiff's disputes, or such investigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

93. Plaintiff expended resources in the form of time and money to repeatedly dispute the same account with the Credit Bureau Defendants, repeatedly.

94. The Credit Bureau Defendants' repeated refusals to block the disputed Fraudulent

Student Loan Accounts provided credibility to that account, forcing an identity theft victim to be repeatedly confronted with the evidence of identity theft.

95. Defendant Equifax violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

96. Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

97. Defendant Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

98. As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; the expenditure of time and money disputing

and trying to remove the fraudulent and derogatory student loan accounts that was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the fraudulent and derogatory student loan accounts that was the product of identity theft.

99. The continued reporting of the fraudulent student loan accounts caused Plaintiff to incur higher interest rates when credit was available and resulted in repeated denials of credit, including denials for automobile financing, housing, and credit cards. As a result, Plaintiff was unable to secure reliable transportation and independent housing during critical periods, impairing his ability to maintain stability for himself and his family.

100. The ongoing inaccurate reporting continued to cause concrete credit denials in 2025.

101. On November 19, 2025, Plaintiff applied for credit with Chase Bank and was denied based on information contained in his Experian consumer report.

102. On November 26, 2025, Plaintiff applied for credit with Citibank and was denied based on information contained in his Equifax consumer report.

103. On December 11, 2025, Plaintiff applied for credit with Barclays and was denied based on information contained in his Experian and TransUnion consumer reports.

104. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Credit Bureau Defendants.

105. The Credit Bureau Defendants' conduct, actions, and inactions were willful,

rendering the Credit Bureau Defendants liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the Credit Bureau Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

106. Plaintiff is entitled to recover attorneys' fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT III
## 15 U.S.C. § 1681c-2
## Failure to Block Identity Theft Information
## (Defendants Equifax, Experian and Trans Union)

107. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

108. Defendant Equifax violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

109. Defendant Experian violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

110. Defendant Trans Union violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

111. Plaintiff submitted ample evidence of the fact that he was an identity theft victim. Plaintiff further supported the fact that he was an identity theft victim by providing to the Credit Bureau Defendants copies of the Police Report and FTC IDT Report.

112. The Credit Bureau Defendants should have blocked the identity theft information but failed to do so at every turn.

113. As a result of the Credit Bureau Defendants ' conduct, action, and inaction, Plaintiff

suffered damage by loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove the fraudulent and derogatory student loan accounts that was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the fraudulent and derogatory student loan accounts that was the product of identity theft.

114. The continued reporting of the fraudulent student loan accounts caused Plaintiff to incur higher interest rates when credit was available and resulted in repeated denials of credit, including denials for automobile financing, housing, and credit cards.

115. As a result, Plaintiff was unable to secure reliable transportation and independent housing during critical periods, impairing his ability to maintain stability for himself and his family.

116. The ongoing inaccurate reporting continued to cause concrete credit denials in 2025.

117. On November 19, 2025, Plaintiff applied for credit with Chase Bank and was denied based on information contained in his Experian consumer report.

118. On November 26, 2025, Plaintiff applied for credit with Citibank and was denied based on information contained in his Equifax consumer report.

119. On December 11, 2025, Plaintiff applied for credit with Barclays and was denied based on information contained in his Experian and TransUnion consumer reports.

120. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose

veracity is doubted and questioned and disbelieved by the Credit Bureau Defendants.

121. The Credit Bureau Defendants' conduct, actions, and inactions were willful, rendering the Credit Bureau Defendants liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the Credit Bureau Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

122. Plaintiff is entitled to recover attorneys' fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT IV
## 15 U.S.C. § 1681s-2b
### Failure to Conduct an Investigation of the Disputed Information and Review of all Relevant Information Provided by the Consumer
### (Defendant Nelnet Only)

123. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

124. Defendant Nelnet refused to remove information that was the product of identity theft—namely the Fraudulent Student Loan Accounts.

125. Defendant Nelnet violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiff's dispute(s), or otherwise by failing to fully and properly investigate Plaintiff's dispute(s), including but not limited to failing to review all relevant information regarding the same.

126. As a result of Defendant Nelnet conduct, action, and inaction, Plaintiff suffered damages, including loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; expenditure of time and money disputing and trying to remove the fraudulent and derogatory student loan accounts that were the product of

identity theft; and expenditure of labor and effort attempting to remove such accounts.

127. The continued reporting of the fraudulent student loan accounts caused Plaintiff to incur higher interest rates when credit was available and resulted in repeated denials of credit, including denials for automobile financing, housing, and credit cards.

128. As a result, Plaintiff was unable to secure reliable transportation and independent housing during critical periods, impairing his ability to maintain stability for himself and his family.

129. The ongoing inaccurate reporting continued to cause concrete credit denials in 2025. On November 19, 2025, Plaintiff applied for credit with Chase Bank and was denied based on information contained in his Experian consumer report. On November 26, 2025, Plaintiff applied for credit with Citibank and was denied based on information contained in his Equifax consumer report. On December 11, 2025, Plaintiff applied for credit with Barclays and was denied based on information contained in his Experian and TransUnion consumer reports.

130. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by Defendant Nelnet.

131. Plaintiff's financial harm has been compounded by his current circumstances. Plaintiff supports two minor children with medical needs and lives in a single-income household. Defendants continued reporting of the fraudulent student loan accounts has exacerbated Plaintiff's financial vulnerability, increased his cost of credit, and constrained his ability to meet household and medical obligations.

132. Defendant Nelnet's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Defendant Nelnet was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

133. Plaintiff is entitled to recover attorneys' fees and costs from Defendant Nelnet in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter a judgment awarding Plaintiff actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs and awarding Plaintiff such other and furth relief as the Court may deem appropriate and proper.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby respectfully demands jury trial on all issues so triable.

Dated: Flushing, New York
January 29, 2026

**CONSUMER ATTORNEYS PLLC**
*/s/Emanuel Kataev, Esq.*
Emanuel Kataev, Esq. Bar# 435851
6829 Main Street
Flushing, NY 11367-1305
(718) 412-2421 (office)
(718) 489-4155 (facsimile)
ekataev@consumerattorneys.com

*Attorneys for Plaintiff*
*Sean Michael Almonte*